IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:24-CV-56-BO-BM

| | |
|---|---|
| NATONYA OWENS, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| THE UNIVERSITY OF NORTH ) | |
| CAROLINA AT PEMBROKE, ) | |
| Defendant. ) | |

This cause comes before the Court on defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded, defendant has replied, and the motion is ripe for ruling. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

The following allegations are taken from plaintiff's amended complaint. Plaintiff, Owens, was hired by defendant, UNC-P, in October 2021 as a student services specialist, working in the Financial Aid Department and handling alternative loans, graduate plus loans, and parent plus loans. Owens was trained almost exclusively on the Elm One platform used by the department during October. Beginning in November 2021, Owens began to receive only minimal training and was tasked with assisting the new Director of Financial Aid, Timothy Sampson. Owens specifically received minimal training on the Banner platform utilized by the Financial Aid Department following the departure of one of UNC-P's contractors.

In February 2022, Owens notified UNC-P that she was pregnant and informed Sampson, Courtney McGirt, the associate director, and Sheila Hardee, from human resources, of her

pregnancy over a lunch. Owens was approved for leave to attend her first appointment with an obstetrician. In March 2022, Sampson asked Owens to change offices, and Owens declined. Sampson allegedly told others that Owens was difficult to work with because she was pregnant and because she would not change offices.

In April 2022, UNC-P hired Taylor Strickland in the Financial Aid Department, and Strickland, a non-pregnant female, was trained on the Banner platform. Strickland had difficulty learning the Banner platform. In June 2022, McGirt issued a verbal warning to Owens regarding her performance using the Banner platform. Owens requested additional training on Banner but was denied. Owens contends that Strickland was given sufficient training on both Elm One and Banner because she was not pregnant, and that despite sufficient training Strickland struggled with her performance but did not receive any discipline.

In late June 2022, Hamilton Locklear became Owens' direct supervisor in the Financial Aid Department. Owens advised Locklear that she was pregnant and that she had not received sufficient training on the Banner platform, but Locklear did not provide any additional training. In July 2022, Sampson singled Owens out during a meeting with coworkers, describing Owens as not sociable and implying that this was because Owens did not like to talk about her pregnancy and personal life. In late July 2022, Owens began glucose testing related to her pregnancy and requested leave to attend those appointments. Owens was diagnosed with gestational diabetes and informed of her risk of early labor. Owens notified Locklear of her diagnosis and risk.

On July 26, 2022, Owens became sick and suspected she had contracted COVID-19. Owens went to a pharmacy for testing and was given permission from Locklear to work from home for the rest of the day. On July 27, 2022, Owens notified Locklear that she would not be able to come to work and that she would work from home again rather than take a sick day. The following

2

day, July 28th, Locklear was admitted to the hospital for her illness. The hospital instructed Owens to remain home for a few days. That day, Owens' husband went to Owens' office at UNC-P and personally notified Locklear and McGirt of Owens' hospitalization and informed them that Owens had been advised to remain at home. Owens' husband also provided Hamilton and McGirt Owens' formal request for maternity leave, specifically Family Medical Leave Act leave. Hamilton and McGirt advised that the maternity leave paperwork would be processed when Owens returned to work and that the paperwork would be delivered to Sampson. Owens expected her maternity leave to begin on August 12, 2022, and continue through November 12, 2022.

On July 29, 2022, Owens informed Locklear that she had just been released from the hospital and that she would work from home that day pending additional COVID-19 testing results; Locklear approved Owens' request to work from home. On August 1, 2022, Owens notified Locklear that she had tested positive for the flu and requested to work from home for the remainder of the week. Locklear approved Owens' request to work from home on August 1st but declined her work-from-home request as to the remaining days that week. Owens reported to work on August 2, 3, and 4, 2022. At approximately 4:00 p.m. on August 4th, Sampson requested a meeting with Owens, during which her employment was terminated. Sampson informed Owens that her employment had been terminated for not calling out of work on July 28, 2022.

Owens initiated this action by filing a complaint on January 31, 2024. [DE 1]. She thereafter amended her complaint, [DE 13], and alleges that UNC-P discriminated against her on the basis of her sex, specifically her pregnancy, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Title VII), when it terminated her employment because of her pregnancy. Owens further alleges a Title VII retaliation claim, alleging that she requested leave as a reasonable accommodation for the birth of her child and that UNC-P terminated her employment

3

in retaliation for requesting maternity leave. Finally, Owens alleges a claim for interference with her rights provided by the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*

## DISCUSSION

UNC-P has moved to dismiss each of Owens' claims pursuant to Rule 12(b)(6). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court "need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (alteration and citation omitted).

At the outset, UNC-P's motion to dismiss plaintiff's original complaint [DE 8] is denied as moot, as an amended complaint has been filed. *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017).

A. Title VII sex discrimination

"Title VII of the Civil Rights Act of 1964 provides that it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[1] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75,

---

[1] Sex includes pregnancy and related medical conditions. 42 U.S.C. § 2000e(k).

78 (1998) (internal quotations omitted). In order to state a claim under Title VII, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute . . .." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). The elements of a Title VII wrongful termination claim are "(1) membership in a protected class, (2) discharge, (3) while otherwise fulfilling Defendants' legitimate expectations at the time of his discharge, and (4) under circumstances that raise a reasonable inference of unlawful discrimination." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 n.8 (4th Cir. 2020) (citation omitted).

The Court has considered Owens' allegations in light of the applicable standards and will permit this claim to proceed. She was a member of a protected class whose employment was terminated. Although UNC-P argues that the allegations demonstrate that she was not meeting her employer's legitimate expectations when she was discharged, Owens has sufficiently alleged that she was qualified for the position but was not given sufficient training despite having requested additional training, unlike another woman in a similar position who was not pregnant. Finally, Owens' allegations sufficiently support that the circumstances surrounding her termination raise a reasonable inference of discrimination.

B. Title VII retaliation

To succeed on a claim of retaliation, a plaintiff must ultimately show (1) that she engaged in protected activity; (2) that the employer took an adverse employment action against her; and (3) that there is a causal nexus between the protected activity and the adverse action. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). Owens alleges that she engaged in protected activity by requesting maternity leave, that her employment was terminated, and that

there is close temporal proximity, specifically seven days, which could support a causal nexus between her protected activity and her termination.

Owens has failed to plausibly allege a Title VII retaliation claim. Protected activity for a Title VII retaliation claim falls into two categories—opposition and participation. *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). "Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Oppositional activities protected by Title VII include "staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities, as well as complaints about suspected violations," *Navy Fed.*, 424 F.3d at 406 (cleaned up, citations omitted).

Owens alleges in her amended complaint and argues in opposition to the motion to dismiss that her request for maternity leave was the protected activity for which she was retaliated against.[2] "Adverse employment actions taken in response to maternity leave, itself, are rightly characterized as ones in discrimination, not retaliation. By contrast, where an individual voices their opposition to discrimination on account of a pregnancy or for exercise of maternity leave, a retaliation claim is implicated." *Patterson-Womble v. Mabus*, Civil Action No. 2:11-834-RMG-BHH, 2013 U.S. Dist. LEXIS 196527, at *12 (D.S.C. Jan. 4, 2013) (internal citations omitted); *see also Blanchard v. Arlington Cnty.*, No. 1:21-cv-0649, 2023 U.S. Dist. LEXIS 31334, at *26 (E.D. Va. Feb. 24, 2023) ("Leave requests are not participation in a Title VII investigation, nor do they constitute opposition to a discriminatory practice.").

---

[2] Both parties focus in their briefs on whether a sufficient causal connection has been alleged. However, the Court on a Rule 12(b)(6) motion is tasked with determining whether the complaint is legally sufficient. *Papasan v. Allain*, 478 U.S. 265, 283 (1986).

6

Owens does not identify any participation or opposition activity in which she engaged which would support a retaliation claim under Title VII. This claim is therefore dismissed. Additionally, UNC-P correctly argues in reply that, contrary to Owens' argument in opposition to the motion to dismiss, she has not alleged a claim for retaliation under the FMLA. *See* Amd. Compl.

C. FMLA interference

Owens' final claim is for FMLA interference. The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). "To make out an 'interference' claim under the FMLA, an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015).

UNC-P argues that Owens has not plausibly alleged that she was entitled to any FMLA benefit at the time her employment was terminated. Owens agrees that she was not yet eligible for FMLA leave at the time she requested maternity leave, but argues that her request nonetheless covered a period after which she would have become eligible for FMLA leave.[3]

> [I]t is not clear that one not entitled to take FMLA leave "avails himself of a protected right" when requesting to take such leave. The case law is both split and not fully developed regarding such an argument. *Compare Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) (holding that eligibility is a prerequisite for a retaliation claim), *with Johnson v. Dollar Gen.*, 880 F.Supp.2d 967, 991 (N.D.Iowa 2012) (criticizing *Walker* ); *see also Wilkins v. Packerware Corp.*, 260 Fed.Appx. 98, 102–103 (10th Cir.2008)(surveying cases and describing the issue as "contestable"). . . .

---

[3] Owens does not respond to UNC-P's arguments regarding her FMLA interference claim, but rather responds by relying on an FMLA retaliation claim. The Court nonetheless construes Owens' arguments as supporting her FMLA interference claim.

7

> It would seem [however], that firing an employee for asking would also frustrate the aims of the Act even if the inquiring employee turns out to be ineligible. Such an "ask at your peril" approach could deter employees, including eligible employees uncertain of the extent of their rights, from taking the first step necessary to exercise their rights.

*McArdle v. Town of Dracut/Dracut Pub. Sch.*, 732 F.3d 29, 35–36 (1st Cir. 2013) (bracketed alteration added).

UNC-P relies on *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004), to argue that because Owens was ineligible at the time she made her FMLA request she is not protected under the Act. UNC-P does not dispute, however, that Owens has plausibly alleged that she would be otherwise eligible for FMLA leave during her planned maternity leave. *See* 29 U.S.C. § 2611(2)(A). And a more recent Eleventh Circuit decision found that "because the FMLA requires notice in advance of future leave, employees are protected from interference prior to the occurrence of a triggering event, such as the birth of a child." *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1274 (11th Cir. 2012). Additionally, "the reference to 'employee' rather than 'eligible employee' is a recognition that some employees will and should give notice of future leave before they have been on the job for twelve months." *Id.* at 1274; *see also Lackie v. CA N. Carolina Holdings, Inc.*, No. 4:20-CV-00072-M, 2021 WL 7081497, at *14 n.7 (E.D.N.C. Dec. 16, 2021) (finding "the opinion in *Pereda* persuasive and reasonably anticipat[ing] the Fourth Circuit would conclude the same.").

In light of the absence of directly controlling precedent and the conflicting decisions of the district courts in this circuit, *Ruddy v. Bluestream Pro. Serv., LLC*, 444 F. Supp. 3d 697, 715 (E.D. Va. 2020) (addressing FMLA retaliation claim), the Court will allow Owens' FMLA interference claim to proceed at this stage.

8

## CONCLUSION

Accordingly, for the foregoing reasons, UNC-P's motion to dismiss plaintiff's original complaint [DE 8] is DENIED AS MOOT. UNC-P's motion to dismiss the amended complaint [DE 18] is GRANTED IN PART and DENIED IN PART. Plaintiff's Title VII retaliation claim is DISMISSED. Plaintiff's Title VII discrimination claim and FMLA interference claim will proceed.

SO ORDERED, this 14 day of January 2025.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE